ARW/arw
n:dh-cff



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MAGISTRATE JUDGE
SIMONTON

**CASE NO.**

UNITED STATES OF AMERICA,

              **Plaintiff,**

vs.

$500,000.00 IN UNITED STATES
CURRENCY, PLUS ACCRUED
INTEREST THEREON,

              **Defendant.**

_____/



### VERIFIED COMPLAINT FOR FORFEITURE IN REM

    Plaintiff, the United States of America, files this civil Complaint for Forfeiture in Rem

against the above-captioned defendant property and states:

    1.      This is a civil action for forfeiture in rem of the above-captioned defendant property.

    2.      This Court has subject matter jurisdiction pursuant to Title 28, United States Code,

Sections 1345, 1355, and 2461.

    3.      Venue is proper in this district pursuant to Title 28, United States Code, Section

1355(b), because certain acts and omissions giving rise to the forfeiture, and upon which this cause

of action is based, occurred within the Southern District of Florida.

    4.      The defendant property is more particularly described as:

           $500,000.00 IN UNITED STATES CURRENCY, PLUS ACCRUED
           INTEREST THEREON.



5.      The United States of America seeks forfeiture of the defendant property pursuant to Title 21, United States Code, Section 881(a)(6), on the ground that the defendant property constitutes proceeds traceable to one or more exchanges for a controlled substance, in violation of Title 21, United States Code, Section 801, et seq.

6.      Pursuant to Title 21, United States Code, Section 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, and all proceeds traceable to such an exchange is subject to forfeiture to the United States.

7.      Marijuana is a controlled substance as defined in Title 21, United States Code, Sections 802 and 812.

## STATEMENT OF FACTS

8.      Beginning in or around 1976, Paul Edward Hindelang, Jr. ("Ed Hindelang") operated a marijuana smuggling organization that was based in South Florida. From about 1976 through 1981, Ed Hindelang and his organization imported hundreds of thousands of pounds of Colombian marijuana into the United States using a tri-partite smuggling system: freighter loads of marijuana would be transported to locations in and around the Bahamas and the Straits of Florida; crewmen would then offload the marijuana from the freighter onto a number of middle boats, such as sport fishing vessels, which would then transport the marijuana closer to the coastal waters of the United States; crewmen would then offload the marijuana to smaller boats that would then approach the coast of the United States to deliver the marijuana loads to distribution points located in the Southern District of Florida and elsewhere.

9.      The importation of this marijuana into the United States generated millions of dollars in United States currency as profits for Ed Hindelang.  Beginning in the late 1970's, Ed Hindelang transported, or caused to be transported, these drug proceeds outside of the United States to Switzerland, Liechtenstein, and elsewhere.

10.      To facilitate the concealment of his drug proceeds, Ed Hindelang through nominees established foreign corporation(s), and then opened bank accounts in the names of those foreign corporation(s) at Union Bank of Switzerland ("UBS").   At some point during the late 1970s, James Daniel Hindelang ("Dan Hindelang"), who is the brother of Ed Hindelang, became a signatory on these account(s).  Ed Hindelang deposited millions of dollars of drug proceeds into these account(s) between 1976 and 1981.  Approximately $30 million in Ed Hindelang's drug proceeds was in the UBS account(s) at the beginning of 1981.

11.      In 1981, Ed Hindelang was indicted in the Eastern District of Louisiana in the case of United States v. Paul Edward Hindelang, Jr., et al., CR 81-109, section F, for the importation of approximately 500,000 pounds of marijuana and conspiring to import an additional 150,000 pounds of marijuana into the Eastern District of Louisiana and elsewhere, including the Southern District of Florida (the "Louisiana Indictment").

12.      In and around May 1981,  Ed Hindelang pled guilty to seven counts of the Louisiana Indictment, including four marijuana importation counts and three marijuana distribution counts, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960(a)(1) and 963. As part of his plea agreement, Ed Hindelang agreed to forfeit all drug proceeds in his possession, as provided under Title 21, United States Code, Section 881(a)(6).  Based upon this agreement, Ed Hindelang turned over to the United States, and subsequently forfeited approximately $640,000.00 in United

3

States currency to the United States.

13.     In the mid-1990s, law enforcement agents in the Southern District of Florida began a money laundering investigation concerning a number of drug traffickers who had smuggled marijuana into the United States in the mid to late1970's, including Ed Hindelang.

14.     In the course of the investigation, law enforcement agents received information from reliable confidential informants who indicated that Ed Hindelang had operated as a marijuana trafficker in the Southern District of Florida and elsewhere between 1976 and 1981, had made millions of dollars from his marijuana trafficking activities, and had transferred large amounts of undisclosed drug proceeds from his marijuana trafficking activities to places outside the United States.

15.     In or about December of 1997, Ed Hindelang met with law enforcement agents and admitted that he had secreted, and concealed from law enforcement authorities, over $30 million in additional drug proceeds outside the United States at the time of his plea agreement with the Eastern District of Louisiana in 1981.

16.     Ed Hindelang further stated that in or about 1981, he turned control of his drug proceeds located at UBS over to Tomas Batalla Esquivel ("Batalla"), a Costa Rican citizen, who was to act as Ed Hindelang's nominee so that Ed Hindelang could further conceal his drug proceeds from U.S. law enforcement authorities. In furtherance of his efforts to conceal and otherwise inhibit the United States from discovering these offshore drug proceeds, Ed Hindelang removed his name from the UBS account(s) and had Batalla assume control of the account(s).

17.     Batalla subsequently caused the transfer of $30 million in drug proceeds out of Switzerland and into Jersey, Channel Islands ("Jersey").

4

18.     In 1998, Ed Hindelang agreed to forfeit $50 million to the United States, pursuant to Title 21, United States Code, Section 881 and Title 18, United States Code, Section 981.  Ed Hindelang indicated that Batalla would have to assist in gathering, liquidating, and repatriating the $50 million in drug proceeds to the United States because of Batalla's nominee control over the funds.

19.     The United States arranged with Batalla to transfer the drug proceeds subject to Ed Hindelang's forfeiture agreement.  The drug proceeds were subsequently transferred to a bank account established by Ed Hindelang's attorney within the United States, and then transferred to the United States for seizure and subsequent forfeiture.  In July 1998, the $50 million was transferred to the United States for forfeiture, though the location from which the funds originated was not disclosed to the United States at the time of the transfer.

20.     On December 17, 1998, a Complaint for Forfeiture in Rem was filed against the $50 million in the United States District Court for the Southern District of Florida, in the case of United States of America v. Fifty Million Dollars in U.S. Currency, Plus Accrued Interest, Case No. 98-3090-Civ-Hoeveler/Turnoff.  On May 27, 1999, a default judgment for forfeiture was entered against the $50 million.

21.     In and around late July or early August 1999, the United States was contacted by a representative of the States of Jersey Police, St. Helier, Jersey (Channel Islands).  That representative indicated that Abacus Financial Services Limited ("Abacus"), a financial institution located in Jersey, had advised Jersey authorities that the firm had recently become aware that Abacus was managing funds possibly connected to Ed Hindelang's drug trafficking activities.

22.     Based upon the disclosure made by Abacus, it was learned that the firm had been contracted in and around 1980 to oversee, manage, and administer a number of trusts, settlements, and corporations nominally affiliated with Batalla.  Moreover, the disclosure revealed that sometime prior to July 1998, Batalla had caused the liquidation of over $44 million from the accounts administered by Abacus.  Those monies had provided the majority share of the $50 million transferred and forfeited by Ed Hindelang to the United States, as discussed above in paragraphs 18 through 20.

23.     A review of documents provided by Abacus in response to a production order issued by the Jersey authorities corroborated information obtained during the course of the U.S. investigation:  that pursuant to Ed Hindelang's plan to conceal his off-shore drug proceeds, Batalla took control and possession of approximately $30 million in Ed Hindelang's drug proceeds in or around 1981 and moved them out of UBS and into accounts(s) maintained and managed by Abacus; that monies from these Abacus accounts were channeled through various foreign trusts and corporations to fund loans, make investments, and/or make disbursements for the ultimate benefit of Ed Hindelang and his wife, Michele Berger, Dan Hindelang and his wife, Ana Gabriella Peters Steinvorth ("Peters Steinvorth"), and other associated individuals; and that Batalla caused the liquidation of the majority of the Abacus-managed funds, totaling approximately $44 million, which were ultimately transferred and forfeited to the United States to fulfill Ed Hindelang's 1998 forfeiture agreement.

24.     The Abacus documents further revealed that in 1981 Abacus first received funds from UBS for the alleged benefit of Batalla.  Subsequently, two trusts, the Queen Noelle Settlement and the Harmony Trust, were created.  Ed Hindelang's drug proceeds first entered Abacus through the

6

Queen Noelle Settlement and the Harmony Trust, and all subsequent Abacus trusts, settlements, companies, and accounts were created from the funds settled into these two trusts. Monies from the successor trusts were transferred into various wholly-owned corporate entities that would in turn acquire assets, make investments, and/or make distributions or appointments of capital. In addition, inter-company loans were often made between the trusts and the related corporate entities.

25.    The Abacus documents indicate that no other significant capital contributions were made into the Queen Noelle Settlement or the Harmony Trust, or any trusts, settlements or accounts subsequently created, other than the initial deposits of Ed Hindelang's drug proceeds.

26.    The Abacus documents reveal that certain of the trusts, settlements, companies, and/or accounts were established for the benefit of Dan Hindelang and Peters Steinvorth, among others.   A review of the Abacus documents reveal that funds from the Queen Noelle Settlement and/or the Harmony Trust were used to fund the following trusts, settlements, and corporate entities that benefitted Dan Hindelang and Peters Steinvorth: the Steinvorth AGP Settlement, Altoona Holdings Limited, Cable Americas Limited ("Cable Americas"), and CR Properties Inc.

27.    The Abacus documents reveal that Cable Americas was funded with proceeds traceable to Ed Hindellang's drug trafficking activities.

28.    During the investigation, as further corroborated by a review of the Abacus documents, agents learned that Dan Hindelang worked for and received compensation from Cable Americas for several years.

29.    In addition, Dan Hindelang received a portion of the net proceeds from the sale of Cable Americas.

30.     The Abacus documents also reveal that Dan Hindelang and Peters Steinvorth received distributions from the Steinvorth AGP Settlement, which was settled with funds traceable to Ed Hindelang's drug trafficking activities.

31.     On or about February 17, 2000, the United States filed a civil Complaint for Forfeiture in Rem in the Southern District of Florida seeking forfeiture of certain funds held within sixteen bank accounts located in Jersey which originated from the Queen Noelle Settlement or the Harmony Trust, in the case of United States v. All Funds Within Sixteen (16) Accounts Held in the Financial Institutions Located in the States of Jersey (Channel Islands), as listed in "Attachment A," Case No. 00-0656-Civ-Midlebrooks (hereinafter referred to as the "*Sixteen Accounts Case*").  The complaint in the *Sixteen Accounts Case* alleges that the funds in the accounts are proceeds traceable to the drug trafficking activities of Ed Hindelang, and are thus subject to forfeiture to the United States.

32.     Peters Steinvorth filed a claim to three of the accounts included for forfeiture in the *Sixteen Accounts Case*. The three accounts claimed by Peters Steinvorth were subsequently forfeited to the Untied States.

33.     On or about August 7, 2000, the United States filed a civil Complaint for Forfeiture in Rem in the Southern District of Florida seeking  forfeiture of a certain parcel of real property purchased with funds emanating from the Steinvorth AGP Settlement, in the case of United States v. Real Property Located as 2211 East Sopris Creek Road, Basalt, Pitkin County, Colorado, Case No. 00-2850-Civ-Midlebrooks (hereinafter referred to as the "*Sopris Creek Case*").  The complaint in the *Sopris Creek Case* alleges that the subject real property was purchased with proceeds of the drug trafficking activities of Ed Hindelang, and is thus subject to forfeiture to the United States.

8

34.     Peters Steinvorth filed a claim to the defendant real property in the *Sopris Creek Case*. The net proceeds from the sale of the defendant real property in the *Sopris Creek Case* were subsequently forfeited to the Untied States.

35.     On March 22, 2001, the United States filed a civil Complaint for Forfeiture in Rem in the Southern District of Florida seeking forfeiture of certain assets located in Jersey which originated from Ed Hindelang's drug proceeds settled into the Queen Noelle Settlement or the Harmony Trust, in the case of United States v. All Assets Listed on Schedule A Hereto, etc., Case No. 01-1181-Civ-Midlebrooks (hereinafter referred to as the "*Schedule A Case*"). The complaint in the *Schedule A Case* alleges that the subject assets are proceeds of the drug trafficking activities of Ed Hindelang, and are thus subject to forfeiture to the United States.

36.     Peters Steinvorth filed a claim to four of the assets named in the *Schedule A Case*. These four assets were subsequently forfeited to the Untied States.

37.     On or about January 30, 2003, the United States and claimants Daniel Hindelang and Peters Steinvorth (the "Claimants") entered into a Settlement Agreement and Consent to Forfeiture ("Consent to Forfeiture") whereby the Claimants agreed to forfeit to the United States, pursuant to 21 U.S.C. § 881(a)(6), $500,000.00 in United States currency, which constitutes proceeds traceable to Ed Hindelang's drug trafficking activities.

38.     Pursuant to the Consent to Forfeiture, the Claimants transferred $500,000.00 in United States currency to Immigration and Customs Enforcement, formerly known as the United States Customs Service, for forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6). This $500,000.00 in United States currency constitutes the defendant property herein.

9

39.    Based upon the totality of the circumstances as described above, the defendant property constitutes proceeds traceable to one or more exchanges for a controlled substance, in violation of Tile 21, United States Code, Section 801, et seq., and is therefore subject to forfeiture to the United States pursuant to the provisions of Title 21, United States Code, Sections 881(a)(6).

**WHEREFORE**, Plaintiff, the United States of America, respectfully requests that the Court issue a Warrant of Arrest In Rem for the defendant property, including any accrued interest thereon. Plaintiff further requests the Court to direct any and all persons having any claim to or interest in the defendant property to file and serve their verified claims and answers as required by the Supplemental Rules for Certain Admiralty and Maritime Claims or suffer default thereof; to declare the defendant property condemned and forfeit to the United States of America, pursuant to Title 21, United States Code, Section 881(a)(6), for disposition according to law; and to grant the United States such other and further relief as the Court deems just and proper, together with costs and disbursements of this action.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By:    _U. R. Walkins_
ARIMENTHA R. WALKINS
ASSISTANT U.S. ATTORNEY
Florida Bar No. 0897787
99 NE 4th Street, 7th Floor
Miami, Florida 33132
Tel: (305) 961-9091
Fax: (305) 536-7599
e-mail: arimentha.walkins@usdoj.gov

## VERIFICATION

I, Cynthia L. Keuthan, Special Agent with Immigration and Customs Enforcement, hereby declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture in Rem is based on information known to me, and that the facts alleged therein are true and correct to the best of my knowledge and belief.

EXECUTED, on this ___29th___ day of October 2003.

CYNTHIA L. KEUTHAN
SPECIAL AGENT
IMMIGRATION AND
  CUSTOMS ENFORCEMENT

11

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET 03 - 22891

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet(SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

$500,000.00 IN UNITED STATES CURRECNY, PLUS ACCRUED INTEREST THEREON,

**CIV - GOLD**

**MAGISTRATE JUDGE SIMONTON**

(b)   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF

(EXCEPT IN U.S. PLAINTIFF CASES)

*Dade 03cv 22891 / Gold / Simonton*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   DADE

(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ARIMENTHA R. WALKINS, AUSA
99 NE 4TH STREET, SUITE 700, MIAMI, FL 33132
(305) 961-9091

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE:   (DADE)   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U S Government Defendant
- ☐ 3 Federal Question (U S Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES   (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R R & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 850 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U S Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | ☐ 791 Empl Ret Inc Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | A OR B |

## VI. CAUSE OF ACTION   (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL UNLESS DIVERSITY)

21 U.S.C. § 881(a)(6) - forfeiture of drug proceeds.

LENGTH OF TRIAL
via _3_ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23

DEMAND $

JURY DEMAND:   ☐ YES   ☐ NO
CHECK YES only if demanded in complaint:

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE   MIDDLEBROOKS
DOCKET NUMBER   01-181cv-dmm & 01-8454cvdmm

DATE   10-29-2003

SIGNATURE OF ATTORNEY OF RECORD   *A. R. Walkins*

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG JUDGE

This form was electronically produced by Elite Federal Forms  Inc